1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WAUSAU UNDERWRITERS INSURANCE
COMPANY, a foreign
corporation; and EMPLOYERS
INSURANCE COMPANY OF WAUSAU,
a foreign corporation,

                   Plaintiffs,

          v.

CONTINENTAL CASUALTY COMPANY,
a foreign corporation; COLMAC
COIL MANUFACTURING, INC., a
Washington corporation; and
C&S WHOLESALE GROCERS, INC.,
a foreign corporation,

                   Defendants.

NO. CV-07-0056-EFS

**ORDER GRANTING MARSH'S MOTION
TO DISMISS AND MOTION TO
STRIKE**

ORDER ~ 1

| | |
|---|---|
| 1 | COLMAC COIL MANUFACTURING, INC., a Washington corporation, |
| 2 | |
| 3 | Counterclaimants and Third-Party Plaintiff, |
| 4 | |
| 5 | v. |
| 6 | WAUSAU UNDERWRITERS INSURANCE COMPANY, a foreign corporation; and EMPLOYERS INSURANCE COMPANY OF WAUSAU, a foreign corporation, |
| 7 | |
| 8 | |
| 9 | Counterclaim Defendants, |
| 10 | and |
| 11 | SEABURY & SMITH, INC., a foreign corporation d/b/a MARSH ADVANTAGE AMERICA/SEABURY & SMITH, INC. |
| 12 | |
| 13 | Third-Party Defendants. |
| 14 | |

A hearing occurred in the above-captioned matter on October 30, 2007, in Richland, Washington.   Kenneth C. Apicella appeared telephonically on behalf of Continental Casualty Company; Jeffrey L. Supinger appeared on behalf of Colmac Coil Manufacturing, Inc. ("Colmac"); and James T. McDermott appeared on behalf of Seabury & Smith Inc. ("Marsh").   Before the Court were Marsh's Motion to Dismiss (Ct. Rec. 29) and Motion to Strike and Refuse to Consider (Ct. Rec. 44). After reviewing the submitted material, relevant authority, and hearing oral argument, the Court is fully informed and grants both motions.   The reasons for the Court's Order are set forth below.

ORDER ~ 2

# I. Background

The following facts are set forth in a light most favorable to Colmac:

Colmac manufactures cooling equipment for industrial applications. Colmac's main customers are in the food processing or food warehousing business.

Marsh has served as Colmac's insurance broker for several years. Marsh knew that approximately forty-percent (40%) of Colmac's cooling systems utilize ammonia as the refrigerant.

Colmac's insurance policy through The Hartford contained a "Pollution Exclusion," but the exclusion covered ammonia leaks. In the summer of 2004, The Hartford indicated it no longer wished to insure Colmac.

On July 9, 2004, Marsh's designated broker, Thomas Blue, met with Colmac to review its insurance needs. Mr. Blue was advised that Colmac's cooling systems utilize ammonia. Mr. Blue later provided Colmac with an insurance summary from Wausau. The summary appeared identical to Colmac's prior policy with The Hartford.

In June 2004, Colmac sold two commercial cooling units to Gartner Refrigeration to install in C&S Wholesale Grocer's ("C&S") warehouse facility in Hawaii. C&S later sued Colmac, alleging one of its cooling units malfunctioned by releasing ammonia into C&S's warehouse and damaging over a quarter of a million boxes of stored frozen food.

Colmac subsequently filed a claim with Wausau. While Wausau is currently defending Colmac in the Hawaii lawsuit in accordance with Colmac's policy, it has done so under a reservation of rights, seeking

ORDER ~ 3

1  declaratory relief in this Court that Colmac's Wausau policy contains a

2  Total Pollution Exclusion that does not cover ammonia leaks.

3      Colmac's answer to Wausau's complaint for declaratory relief

4  contains a third-party complaint against Marsh for negligence, breach of

5  contract, and breach of fiduciary duty.  Colmac's third-party claims are

6  contingent upon whether or not Wausau prevails in the declaratory

7  judgment action.

8                          **II. Discussion**

9  **A. Marsh's Motion to Dismiss (Ct. Rec. 29)**

10      **1. Rule 12(b)(1) Subject Matter Jurisdiction**

11      Marsh argues that Colmac fails to state "a case or controversy"

12  within this Court's subject-matter jurisdiction because Colmac's alleged

13  claims against Marsh are contingent upon this Court determining Colmac's

14  policy did not provide coverage for ammonia leaks.  (Ct. Rec. 30 at 5.)

15  Colmac responds that this Court has subject-matter jurisdiction over

16  Marsh in the unique procedural posture of the declaratory judgment

17  context.  (Ct. Rec. 51 at 3.)[1]

18  ───────────────────

19      [1]Colmac initially argued its Third-Party Complaint alleged an actual

20  controversy under the Declaratory Judgment Act.  (Ct. Rec. 36 at 9.)

21  Marsh insists Colmac's reliance on declaratory judgment standards and

22  case law is improper because its Third-Party Complaint does not seek

23  declaratory relief.  In its supplemental brief, Colmac states that it

24  never pled a claim for declaratory relief; rather, it just insisted the

25  Court has subject matter jurisdiction in the unique procedural posture

26  of the declaratory judgment context.  Not so.  Colmac's original

ORDER ~ 4

1        **i. Rule 12(b)(1) Standard**

2        Federal Rule of Civil Procedure 12(b)(1) provides that a complaint

3   may be dismissed for "lack of jurisdiction over the subject matter."

4   FED. R. CIV. P. 12(b)(1).  "When subject matter jurisdiction is challenged

5   under Federal Rule of Civil Procedure 12(b)(1), plaintiff has the burden

6   of proving jurisdiction in order to survive the motion." *Tosco Corp. v.*

7   *Cmtys. for a Better Env't,* 236 F.3d 495, 499 (9th Cir. 2001).    A

8   plaintiff suing in a federal court must show in his pleading,

9   affirmatively and distinctly, the existence of whatever is essential to

10  federal jurisdiction, and, if he does not do so, the court, on having the

11  defect called to its attention or on discovering the same, must dismiss

12  the case, unless the defect can be corrected by an amendment.  *Id.*

13       On a Rule 12(b)(1) motion to dismiss for lack of subject matter

14  jurisdiction, the court may review any evidence, such as affidavits and

15  testimony, to resolve factual disputes concerning the existence of

16  jurisdiction.  *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir.

17  1988), *cert. denied,* 489 U.S. 1052 (1989).   Consideration of materials

18  outside the pleadings does not convert a 12(b)(1) motion into one for

19  _____

20  memorandum belies its amended position because it unequivocally stated

21  that it alleged an actual controversy under the Declaratory Judgment Act.

22  *Id.*    Nevertheless, the distinction between standards is largely

23  irrelevant when examining standing and ripeness because the Constitution

24  does not require less of litigants simply because their claim is framed

25  as an action for declaratory judgment.  *See Calderon v. Ashmus,* 523

26  U.S. 740, 746 (1998).

ORDER ~ 5

1   summary judgment.  *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379

2   (9th Cir. 1983).

3   ### ii. Standing and Ripeness Standard

4       Article III of the Constitution limits the federal court's judicial

5   power to "cases" and "controversies."  Federal courts are presumed to

6   lack jurisdiction "unless the contrary appears affirmatively from the

7   record."  *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 546

8   (1986).

9       Standing is a threshold requirement in every federal case.  *Warth*

10  *v. Seldin,* 422 U.S. 490, 498 (1975).  The three components of Article III

11  standing are: (1) a distinct and palpable injury to the plaintiff; (2)

12  a fairly traceable causal connection between the injury and challenged

13  conduct; and (3) a substantial likelihood that the relief requested will

14  prevent or redress the injury.  *Lujan v. Defenders of Wildlife,* 504 U.S.

15  555, 560-61 (1992); *Covington v. Jefferson County,* 358 F.3d 626, 637-38

16  (9th Cir. 2004).

17      Ripeness often "coincides squarely with standing's injury in fact

18  prong," *Thomas v. Anchorage Equal Right Com'n,* 220 F.3d 1134, 1138 (9th

19  Cir. 2000) (en banc), and in "measuring whether a litigant has asserted

20  an injury that is real and concrete rather than speculative and

21  hypothetical, the ripeness inquiry merges almost completely with

22  standing."  *Id.* at 1139 (citations omitted).  Accordingly, Marsh's

23  assertions that Colmac's claims are hypothetical and contingent will be

24  addressed in the Court's ripeness inquiry.

25      "[T]he ripeness doctrine seeks to separate matters that are

26  premature for review because the injury is speculative and may never

ORDER ~ 6

occur, from those cases that are appropriate for federal court action." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 117 (Vicki Been et al. eds., 5th ed. 2007) (citing *Abbott Labs v. Gardner,* 387 U.S. 136, 148 (1967). As the Ninth Circuit has observed, the court's "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas,* 220 F.3d at 1138.

"The point at which an issue becomes sufficiently concrete and real to constitute a case or controversy as opposed to an abstract or hypothetical situation can be more a matter of intuition and reason than a rigid application of a definitive standard." MOORE'S FEDERAL PRACTICE - CIVIL § 101.75 (2007). The Supreme Court has described the line of demarcation as follows:

> The difference between an abstract question and a controversy
> . . . is necessarily one of degree, and it would be difficult,
> if it would be possible, to fashion a precise test for
> determining in every case whether there is such a controversy.
> Basically, the question in each case is whether the facts
> alleged, under all the circumstances, show that there is a
> substantial controversy, between parties having adverse legal
> interests, of sufficient immediacy and reality.

*Maryland Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941). "If the facts are uncertain and the court is being asked to make a legal ruling based on the possibility that certain facts will be found to exist and some point in the future, then a decision would constitute nothing more than an advisory opinion based on a hypothetical scenario." MOORE'S - CIVIL § 101.75.

ORDER ~ 7

1    Here, Colmac's claims against Marsh are entirely contingent and

2  hypothetical.  As Marsh correctly points out, Colmac's own pleadings

3  pursue contingent relief: Colmac's Third-Party Complaint seeks "[a]ll

4  damages caused to Colmac by Marsh's negligence, breach of contract, and

5  breach of fiduciary duty, *in the event Wausau's exclusion is valid"* (Ct.

6  Rec. 19 at 16) (emphasis added); Colmac's Memorandum in Opposition states

7  that, "should the [C]ourt rule in Wausau's favor, Colmac would face real

8  injury."  (Ct. Rec. 36 at 10.)

9    In fact, Colmac has suffered no injury from Marsh's alleged failure

10 to obtain adequate insurance coverage because Wausau, Colmac's insurance

11 provider, has not breached either its duty to defend (Wausau is paying

12 for Colmac's defense costs in the underlying Hawaii lawsuit, albeit under

13 a reservation of rights) or its duty to indemnify (Colmac's liability in

14 the underlying Hawaii lawsuit is still undecided).

15    Colmac's argument that it has incurred damages in the form of

16 attorney fees and costs defending against Wausau's declaratory judgment

17 action is not persuasive because, should Colmac prevail (meaning Wausau

18 has a duty to defend and indemnify Colmac in the Hawaii litigation), then

19 Colmac is entitled to recover its attorney fees and costs. *Olympic*

20 *Steamship Co., Inc. v. Centennial Ins. Co.,* 117 Wn.2d 37, 52 (1991).

21 Accordingly, Colmac's perceived damages in the form of attorney fees and

22 costs are also contingent and hypothetical.  Colmac's Third-Party

23 Complaint asks the Court to issue an advisory opinion based on a

24 hypothetical scenario.  This issue is not ripe.

25

26

ORDER ~ 8

**2. Rule 12(b)(6) Failure to State a Claim**

Marsh argues a dismissal for failure to state a claim is appropriate because Colmac's claims against Marsh for negligence, breach of contract, and breach of fiduciary duty all require that Colmac plead actual, recoverable damages - and there are none.  (Ct. Rec. 30 at 11.)  Colmac responds that a special relationship existed between Marsh and Colmac and Marsh's acts make it liable for Colmac's attorney fees and costs incurred in defending the declaratory judgment action.  (Ct. Rec. 51 at 10.)

Here, it is not necessary for the Court to address Marsh's Rule 12(b)(6) argument because, as stated, the matter is not ripe.

**3. Rule 14(a) Improper Joinder**

Marsh asserts that Colmac improperly joined it as a third-party defendant under Rule 14(a) because Colmac's third-party claim is not derivatively based on Wausau's original claim.  (Ct. Rec. 30 at 16.)  Colmac responds that joinder of an insurance agent by its insured party is proper in declaratory judgment actions where the insurance carrier seeks a determination of non-coverage.  (Ct. Rec. 36 at 12.)

Federal Rule of Civil Procedure 14(a) provides for service of a third-party complaint "upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against the third-party plaintiff." *U.S. v. One 1977 Mercedes Benz,* 708 F.2d 444, 452 (9th Cir. 1983).  The decision to allow a third-party defendant to be impleaded under Rule 14 is entrusted to the sound discretion of the trial court.  *Id.*

The parties assert two competing perspectives on Rule 14 impleader. The first is a policy-oriented perspective adopted by the Fifth Circuit

ORDER ~ 9

1  in *American Fidelity & Casualty Co. v. Greyhound Corp.,* 232 F.2d 89 (5th

2  Cir. 1956) and followed in *Old Republic Insurance Co. v. Concast, Inc.,*

3  99 F.R.D. 566, 569 (S.D.N.Y. 1983).

4       In *Old Republic,* the court examined a conceptually similar

5  declaratory judgment action where the third-party defendant claimed it

6  was impermissibly joined under Rule 14(a).  99 F.R.D. at 568.  That court

7  noted that, in declaratory judgment actions, strictly interpreting Rule

8  14(a) makes it logically impossible for defendants to maintain third-

9  party complaints because determining that a plaintiff/insurance company's

10  policy does not cover defendant/insured does not create a claim against

11  defendant/third-party plaintiff for which third-party defendant could be

12  liable in all or in part.  *Id.*

13       The court declined to follow such a narrow interpretation, stating

14  Rule 14's policy is to facilitate judicial economy and avoid multiple and

15  circuitous suits.  *Id.* (citations omitted).  Both *American Fidelity* and

16  *Old Republic* focused on the factual similarities between the main claim

17  and the third-party action to determine whether Rule 14 permitted

18  impleader.

19       The second competing perspective is the narrow approach adopted in

20  *One 1977 Mercedes Benz*, where the Ninth Circuit set forth the

21  requirements for Rule 14(a) impleader:

22       [A] third-party claim may be asserted only when the third
         party's liability is in some way dependant on the outcome of
23       the main claim and the third party's liability is secondary or
         derivative.  It is not sufficient that the third-party claim
24       is a related claim; the claim must be derivatively based on
         the original plaintiff's claim.
25

26

ORDER ~ 10

708 F.2d. at 452; *see also United States v. Hutchins,* 47 F.R.D. 340, 341

("Rule 14 is a 'procedural mechanism.'   It is available only if the

third-party defendant is or may be liable to the third-party plaintiff

for the main claim as a matter of substantive law.").   This narrow

perspective is applied in a similar insurance context in *United States*

*Fire Insurance Co. v. Reading Municipal Airport Authority,* 130 F.R.D. 38

(E.D. Pa. 1990).   There, the district court adopted Rule 14(a)'s narrow

interpretation and concluded joining the third-party defendant insurance

broker was impermissible.   *Id.* at 39.

Here, it is not necessary for the Court to decide Marsh's 14(a)

argument because, as stated, the issue is not ripe.   The Court

nevertheless notes in passing that Colmac's negligence, breach of

contract, and breach of fiduciary duty claims are related to but not

derivative of Wausau's declaratory judgment action against Colmac.   The

fact that the claims asserted in the Complaint for Declaratory Relief and

the Third-Party Complaint are inextricably intertwined does not satisfy

the Ninth Circuit's narrow impleader requirements set forth in *One 1977*

*Mercedes Benz.*

**B. Marsh's Motion to Strike and Refuse to Consider (Ct. Rec. 44)**

Marsh asserts that Colmac improperly submitted three affidavits,

over 350 pages of exhibits, and a statement of facts[2] in opposition to

---

[2] As Marsh correctly states, it appears Colmac, by submitting a

"Statement of Facts" in opposition to Marsh's 12(b)(6) motion to dismiss,

has confused a motion to dismiss with a motion for summary judgment.   *See*

L.R. 56.1(b).

ORDER ~ 11

1   its Rule 12(b)(6) motion to dismiss because the Court, in Rule 12(b)(6)

2   actions, is limited to reviewing the complaint's contents.  (Ct. Rec. 46

3   at 2.)  Colmac responds that its submitted material can be reviewed by

4   the Court because the documents' authenticity is not challenged and they

5   are referred to in the complaint.  (Ct. Rec. 53 at 4.)

6        In deciding a motion to dismiss for failure to state a claim, the

7   court's  review  is  generally  limited  to  the  complaint's  contents.

8   *Campanelli v. Brockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996).  The court

9   must accept all factual allegations pled in the complaint as true, and

10  must construe them and draw all reasonable inferences from them in favor

11  of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336,

12  337-38 (9th Cir. 1996).  The Court may also consider material which is

13  properly submitted as part of the complaint:

> [A] document is not "outside" the complaint if the complaint
> specifically refers to the document and if its authenticity is
> not questioned . . . .   When [the] plaintiff fails to
> introduce a pertinent document as part of the pleading, [the]
> defendant may introduce the exhibit as part of his motion
> attacking the pleading . . . .   Documents whose contents are
> alleged in a complaint and whose  authenticity no party
> questions, but which are not physically attached to the
> pleading, may be considered in ruling on a Rule 12(b)(6)
> motion to dismiss.

*Cooper v. Pickett,* 137 F.3d 616, 622-23 (9th Cir. 1997), *superseded on*

*other grounds by statute,* Private Securities Litigation Reform Act of

1995 (PSLRA), 15 U.S.C. §§ 78u-4(b)(1) & (2), *as recognized in Fischer*

*v. Vantive Corp.*, 283 F.3d 1079 (9th Cir. 2002); *see also Marder v.*

*Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (finding that a court may

consider evidence on which the complaint 'necessarily relies' if: (1) the

ORDER ~ 12

1  complaint refers to the document; (2) the document is central to the

2  plaintiff's claim; and (3) no party questions the authenticity of the

3  copy attached to the 12(b)(6) motion).

4        Here, it is Colmac, not Marsh, seeking to submit supplemental

5  material referenced in the Third-Party Complaint.  This is opposite of

6  the factual scenario in *Cooper,* where it was the defendant who urged the

7  court to consider documents referenced in the complaint to support

8  dismissal.  Colmac does cite *Fields v. Legacy Health System,* 413 F.3d 943

9  (9th Cir. 2005) to support its argument, but this case also contains a

10 defendant urging the court to consider documents referenced in the

11 complaint to support dismissal.  Colmac cites no authority demonstrating

12 that the Court can or should consider a plaintiff's subsequently

13 submitted material.  Moreover, Marsh does challenge the authenticity of

14 the supplemental material, noting multiple instances where discrepancies

15 exist.  (Ct. Rec. 55 at 5.)

16      The Court finds that striking Colmac's supplemental material is

17 appropriate.  As case law plainly indicates, the Court's review is

18 generally limited to the complaint's contents.  Considering supplemental

19 material referenced in the complaint is the exception, not the rule, and

20 this exception applies to defendants, not plaintiffs.  And given that

21 Marsh does challenge supplemental documents' authenticity, Colmac cannot

22 and should not be allowed to submit documentation to supplement its own

23 complaint.  If its complaint is deficient, the proper action is to move

24 the Court to amend.

25      Accordingly, **IT IS HEREBY ORDERED**:

26      1. Marsh's Motion to Dismiss **(Ct. Rec. 29)** is **GRANTED.**

ORDER ~ 13

1      2. Marsh's Motion for Expedited Hearing **(Ct. Rec. 49)** is **GRANTED.**

2      3. Marsh's Motion to Strike and Refuse to Consider **(Ct. Rec. 44)**

3  is **GRANTED.**

4      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

5  this Order and to provide copies to all counsel.

6      **DATED** this ____24th____ day of March 2008.

7

8                            S/ Edward F. Shea
                                EDWARD F. SHEA

9                      United States District Judge

10
Q:\Civil\2007\56.Dismiss.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 14